**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TIANJIN PORT FREE TRADE ZONE
INTERNATIONAL TRADE SERVICE CO., LTD.
38 Yuanchang Road
Comprehensive Bonded Area
Tianjin Airport Economic Area
Tianjin, China

                                   Petitioner,          Civil Action No. 2:17-CV-4130 (LDW)(AYS)

         v.

TIANCHENG CHEMPHARM, INC. USA
855 Conklin Street, Suite S
Farmingdale, New York, 11735

                                   Respondent.

---

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

---

**WHITE AND WILLIAMS, LLP**
*Attorneys for Petitioner*
Eric B. Porter
7 Times Square, Suite 2900
New York, NY 10036
Phone: (212) 714-3078

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS ............................................................................3

STANDARD OF REVIEW ...........................................................................8

ARGUMENT ...............................................................................................11

      POINT I

      RESPONDENT WAS PROPERLY SERVED DURING THE UNDERLYING ARBITRATION.........................................................11

      POINT II

      RESPONDENT'S ARGUMENT THAT THE CONTRACT WAS SOMEHOW "FABRICATED" IS WITHOUT MERIT. ...................................13

      POINT III

      RESPONDENT'S ARGUMENT THAT TIANJIN PORT FREE DID NOT ATTEMPT TO "AMICABLY SETTLE" THE DISPUTE IS WITHOUT MERIT..............................................................................16

      POINT IV

      RESPONDENT'S REQUEST FOR ATTORNEYS' FEES IS ENTIRELY BASELESS. ...........................................................17

CONCLUSION............................................................................................18

20383045v.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Brass v. American Film Technologies, Inc.,
   987 F.2d 142 (2d Cir. 1992)...............................................................................8, 14

Carter v. Inc. Village of Ocean Beach,
   759 F.3d 159 (2d Cir. 2014)......................................................................................17

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
   343 F.3d 189 (2d Cir. 2003).......................................................................................8

Europcar Italia, S.P.A. v. Maiellano Tours,
   156 F.3d 310 (2d Cir. 1998)..........................................................................14, 15, 17

Geotech Lizenz AG v. Evergreen Systems, Inc.
   697 F. Supp. 1248 (E.D.N.Y. 1988) .........................................................................11

Intel Capital (Cayman) Corp. v. Shan Yi,
   15-mc-50406, 2015 U.S. Dist. LEXIS 153495 (E.D. Mich. Nov. 13, 2015)............................12

Jiangsu Changlong Chemicals, Co. v. Burlington Bio-Medical & Scientific Corp.,
   399 F. Supp. 2d 165 (E.D.N.Y. 2015) ...................................................9, 10, 11, 18

Karen Mar. Ltd. v. Omar Int'l Inc.,
   322 F. Supp. 2d 224 (E.D.N.Y. 2004). .....................................................................9

OOO FC Grand Capital v. Int'l Pharmaceutical Services,
   16-CV-6156, 2017 U.S. Dist. LEXIS 207726 (E.D.N.Y. Dec. 15, 2017) ..............9, 11, 12, 13

Scherk v. Alberto-Culver Co.,
   417 U.S. 506 (1974)...................................................................................................9

Sonera Holding B.V. v. Cukurova Holding A.S.
   895 F. Supp. 2d 513 (S.D.N.Y. 2012)......................................................................11

Tempo Shain Corp. v. Bertek, Inc.,
   120 F.3d 16 (2d Cir. 1997).......................................................................................13

STATUTES AND OTHER AUTHORITIES

9 U.S.C. § 201 *et seq*.................................................................................................9

Fed. R. Civ. P. 12.........................................................................................................8

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIANJIN PORT FREE TRADE ZONE INTERNATIONAL TRADE SERVICE CO., LTD. 38 Yuanchang Road Comprehensive Bonded Area Tianjin Airport Economic Area Tianjin, China<br><br>            Petitioner,<br><br>v.<br><br>TIANCHENG CHEMPHARM, INC. USA 855 Conklin Street, Suite S Farmingdale, New York, 11735<br><br>            Respondent. | **PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**<br><br>Civil Action No. 2:17-CV-4130 (LDW)(AYS) |

## PRELIMINARY STATEMENT

Petitioner Tianjin Port Free Trade Zone International Trade Service Co., LTD ("Tianjin Port Free" or "Petitioner"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion to dismiss served by Respondent Tiancheng Chempharm, Inc. USA ("Tiancheng Chempharm" or "Respondent") on or around January 4, 2018.

On December 14, 2015, an arbitration tribunal (the "Arbitration Tribunal" or "Tribunal") appointed by the China International Economic and Trade Arbitration Commission ("CIETAC") issued an Arbitration Award in which it determined that Tiancheng Chempharm had breached its sales contract with Tianjin Port Free. The Tribunal accordingly awarded Tianjin Port Free $480,000 in damages, along with attorneys' fees, interest, and the cost of the arbitration. Tianjin Port Free thereafter commenced this action to confirm and render a judgment on the arbitration award pursuant to the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention").

In an effort to avoid liability under the Arbitration Award by attempting to re-litigate the merits of the arbitration proceeding, Tiancheng Chempharm now moves to dismiss the Petition based upon arguments largely premised upon both misstatements of the record and extraneous materials not properly before the Court.  But even if the Court were to consider these improperly submitted materials, Tiancheng Chempharm's arguments are still without merit, and its motion should be denied in its entirety.

First, Respondent argues that it was never properly served with notice of the underlying arbitration.  This self-serving contention is directly contradicted by the Arbitration Award itself, which makes clear that the Tribunal mailed multiple copies of the arbitration materials to Respondent at multiple addresses provided by Tianjin Port Free, and that the Tribunal verified that these materials were duly served.  Moreover, the accompanying Declaration of Esther Li ("Li Declaration") makes clear that the addresses Tianjin Port Free provided to CIETAC for service purposes included <u>both</u> Respondent's correct address and the address listed for Respondent with the New York Secretary of State.

Second, Respondent argues that the underlying sales contract between the parties, which provided for Petitioner's sale to Respondent of certain goods, was somehow "forged."  But the alleged "evidence" Respondent has improperly submitted on this point does not support Respondent's outrageous conclusion.  Further, Respondent does not deny receiving the goods at issue in the sales contract, and appears to concede that "Petitioner performed its duties under the Contract."  (Respondent's Memorandum at 1.)

Regardless, the Tribunal expressly concluded in the Arbitration Award that the contract was valid, and no less an authority than the Second Circuit Court of Appeals has held explicitly in cases involving the recognition of a foreign arbitration award under the Convention that a

claim of forgery concerning the subject contract is "a matter to be determined exclusively by the arbitrators."

Finally, Respondent argues that Tianjin Port Free cannot enforce the Arbitration Award because it failed to first attempt to negotiate a resolution of the dispute before initiating the arbitration process.  But Respondent's argument is expressly contradicted by the Arbitration Award, which reflects that prior to initiating the arbitration proceeding Tianjin Port Free "reminded the Respondent to make payment, but the person-in-charge of the Respondent avoided meeting the representatives of [Tianjin Port Free] and refused to fulfill the payment obligations under the Contract."  (Arbitration Award at 3.)

In short, and as discussed in greater detail below, Tiancheng Chempharm's arguments are wholly without merit, its motion to dismiss should be denied, and Tianjin Port Free's Petition to confirm the Award should be granted in its entirety.

## STATEMENT OF FACTS

**The Sales Contract at Issue**

On December 16, 2013, Tianjin Port Free entered into a sales contract with Tiancheng Chempharm (the "Sales Contract").  A true and correct copy of the Sales Contract is annexed to the Petition as Exhibit A.  The Sales Contract is signed by representatives for both parties, and it lists Tiancheng Chempharm's address as 855 Conklin Street, Suite S, Farmingdale, New York, 11735 (the "Conklin Street Address"). (Sales Contract at 1.)

Pursuant to the Sales Contract, Tianjin Port Free sold, and Tiancheng Chempharm agreed to purchase, 5,000 kg of creatine monohydrate, 4,000 kg of betaine anhydrous, and 9,000 kg of creatine HCL (collectively the "Goods") for the total price of USD $480,000.  (Sales Contract at 1.)  Under the terms of the Sales Contract, payment to Tianjin Port Free was due within 90 days.

(Id.)  Tianjin Port Free delivered the specified Goods in a timely manner pursuant to the Sales

Contract's terms, and Tiancheng Chempharm did not raise any issues as to the quality of the

Goods upon receipt.  (Petition at § 12.)

> The Sales Contract contains an arbitration clause, which provides as follows:
>
> ARBITRATION:  All disputes in connection with this contract or the execution thereof shall be amicably settled through negotiation.  In case no settlement can be reached between the two parties, the two parties, the case under dispute shall be submitted to China International Economic and Arbitration Commission for arbitration, in accordance with the commission's arbitration Rules in effect at the time of applying for arbitration shall take place in Tianjin.  The decision made by the Arbitration Commission shall be accepted as final and binding upon both parties.  The fee for arbitration shall be borne by the losing party unless otherwise awarded.

(Sales Contract at 2.)

Notwithstanding having received the Goods and having failed to make any objection to

the quality thereof, Tiancheng Chempharm failed to pay Tianjin Port Free the purchase price of

USD $480,000. (Petition at § 13.) In failing to pay Tianjin Port Free the USD $480,000 purchase

price, Tiancheng Chempharm breached its obligations under the Sales Contract.  (Id. at §14.)

After Tiancheng Chempharm failed to make payment in a timely manner, Tianjin Port

Free "reminded the Respondent to make payment, but the person-in-charge of the Respondent

avoided meeting the representatives of [Tianjin Port Free] and refused to fulfill the payment

obligations under the Contract."  (Arbitration Award at 3.)[1]

Accordingly, on March 19, 2015 Tianjin Port Free commenced an arbitration proceeding

before CIETAC pursuant to the terms of the Sales Contract.

---

[1] A true and correct copy of the Arbitration Award is annexed to the Petition as Exhibit B.

**The Underlying Arbitration Proceeding**

On May 13, 2015, CIETAC sent copies of the notice of arbitration, the Arbitration Rules, a list of arbitrators, and Tianjin Port Free's arbitration application and supporting evidence to Tiancheng Chempharm at the Conklin Street Address.  (Arbitration Award at 1; Declaration of Eric Porter dated February 2, 2018 ("Porter Declaration"), Ex. A.)  CEITAC verified that these materials were "duly served" on Tiancheng Chempharm on May 18, 2015.  (Arbitration Award at 1.)  CEITAC then appointed an Arbitration Tribunal to conduct the arbitration, and CEITAC mailed a Notice of Arbitral Tribunal Organization to both parties on July 14, 2015. (Id.)

The documents CEITAC sent to Tiancheng Chempharm were thereafter returned because "the entity refused to accept the document as the recipient did not work there."  (Id. at 1-2.)

Counsel for Tianjin Port Free then wrote to CIETAC on August 21, 2015 to provide it with additional addresses where Tiancheng Chempharm could be served (the "Li Letter").  A true and correct copy of the Li Letter is annexed to the Li Declaration as Exhibit 1, and a certified English language translation of the Li Letter is annexed to the Porter Declaration as Exhibit A.  By the Li Letter, Tianjin Port Free's counsel provided CIETAC with the following additional addresses for Tiancheng Chempharm:  17 Breuer Avenue, Great Neck, NY 11023 (the "Breuer Avenue Address"), and 28-12 203 Street, Bayside, NY 11360 (the "Bayside Address"). (Li Letter.)

The Breuer Avenue Address matches the address currently listed on the New York State Department of State website as Respondent's service address, as well as the address for its Chief Executive Officer and Principal Executive Office.  (Porter Declaration, Ex. C.)

Tianjin Port Free's counsel found the Bayside Address through a search for Tiancheng Chempharm in a U.S. business registration database search engine provided by Wysk, a Texas-

based information technology company.  (Li Decl. at 11.)  A true and correct copy of the Wysk report listing the Bayside Address as the address of Tiancheng Chempharm's Principal Executive Office is annexed to the Li Declaration as Exhibit 2.

The Tribunal postponed the arbitration session until October 15, 2015 to give itself time to re-mail the arbitration materials to Respondent.  (Arbitration Award at 2.)  On August 31, 2015, CIETAC re-mailed the arbitration materials to Respondent using the additional information Petitioner had provided.  CIETAC verified that these materials were "sent to the Respondent" and "duly served on September 4, 2015."  (Id.)

On October 15, 2015, the Tribunal held an arbitration hearing in Beijing, China. Respondent failed to appear, and the Tribunal accordingly proceeded by default pursuant to Article 39 of the CIETAC Arbitration Rules.  (Id.)  A true and correct copy of the CIETAC Arbitration Rules is annexed to the Porter Declaration as Exhibit D.  During the hearing Tianjin Port Free presented evidence and legal authority to support its positions and answered the Arbitration Tribunal's questions.  (Arbitration Award at 2.)  The Tribunal also "checked and verified the original evidences presented by" Tianjin Port Free during the hearing.  (Id.)

On October 20, 2015, the Arbitration Tribunal sent Tiancheng Chempharm the materials submitted by Tianjin Port Free during the arbitration and informed Tiancheng Chempharm that any objections should be submitted to the Arbitration Tribunal in writing within a specified time period.  (Id.)  The Arbitration Tribunal "verified that the aforesaid notice sent to the Respondent was duly served on October 23, 2015." Id.)

Though Tiancheng Chempharm failed to submit any objections during the allotted time, the Tribunal postponed the awarding deadline, giving Tiancheng Chempharm additional time to submit a response.  (Id. at 3) Once again, Respondent failed to do so.

**The Arbitration Award**

On December 14, 2015, the Arbitration Tribunal issued its written Arbitration Award.  In the Award, the Tribunal made clear that it "recognize[d]" certain "fundamental facts."  (Award at 4.)  The Tribunal found that on December 16, 2013, Tianjin Port Free and Tiancheng Chempharm "signed the Contract."  (Id.)  It found that Tianjin Port Free had shipped the Goods to Tiancheng Chempharm in December of 2013, and that Tianjin Port Free had sent Tiancheng Chempharm "the original bill of lading" via express mail.  (Id. at 5.)  It found that Tiancheng Chempharm had not paid the purchase price.  (Id.)  As a result, it concluded that Tiancheng Chempharm had breached the Sales Contract.  (Id.)

The Tribunal accordingly ordered Tiancheng Chempharm to pay Tianjin Port Free the $480,000 purchase price of the Goods, along with attorneys' fees, interest, and the cost of the arbitration.  (Id. at 6.)

**The Petition to Confirm the Arbitration Award and the History of this Proceeding**

Petitioner initiated this proceeding by filing the Petition to Confirm Arbitration Award on July 12, 2017.  (Dkt. No. 1.)  Petitioner served Respondent via the New York Secretary of State on July 19, 2017.  (Dkt. No. 5.)  The Secretary of State mailed the Petition to Respondent at the Breuer Avenue Address.  (Porter Decl., Ex. C.)

When Tiancheng Chempharm thereafter failed to respond within the applicable time period, Tianjin Port Free sought and obtained a Certificate of Default from the Clerk of the Court.  (Dkt. Nos 5-9.)  Petitioner then filed a formal motion for default judgment on September 15, 2017, and mailed copies of its motion papers to Respondent at the Conklin Street Address. (Dkt. Nos. 10-12.)

Over a month later, on October 19, 2017, Respondent's counsel wrote the Court to acknowledge that it had received Petitioner's papers (presumably at the Conklin Street Address), and to request additional time to respond to the Petition.  The Court subsequently granted that request, and Respondent thereafter moved to dismiss the Petition on or around January 4, 2018. (Dkt. No. 23.)

In the papers Respondent submitted in purported support of its motion to dismiss, Respondent represented that its correct address is the Conklin Street Address.  (See, e.g., Jiangjiang Yu Declaration, Ex. A.)

## STANDARD OF REVIEW

### Motion to Dismiss

Though Tiancheng Chempharm does not identify in its Notice of Motion or supporting Memorandum the specific rule pursuant to which it is moving to dismiss, Respondent is presumably moving pursuant to Fed. R. Civ. P. 12(b)(6).  Such a motion may only be granted "if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 194 (2d Cir. 2003). In assessing a motion to dismiss, the Court is limited to considering the factual allegations in the pleading itself, along with "documents attached to the [pleading] as an exhibit or incorporated in it by reference, [ ] matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1992).

20383005v.1

**Recognition of Foreign Arbitration Awards Under the Convention**

The United States and China are both signatories to the Convention, 9 U.S.C. § 201 *et seq*., whereby both countries have agreed "to recognize each other's arbitral awards and to enforce them in accord with the rules of procedure of the place where the award is relied upon." Jiangsu Changlong Chemicals, Co. v. Burlington Bio-Medical & Scientific Corp., 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2015) (Wexler, J.).

"A district court's review of an arbitration award is extremely deferential," and "[s]uch deference is particularly appropriate with respect to foreign arbitration awards." OOO FC Grand Capital v. Int'l Pharmaceutical Services, 16-CV-6156, 2017 U.S. Dist. LEXIS 207726, **11-2 (E.D.N.Y. Dec. 15, 2017) (internal citations omitted).  Courts in this district have recognized that "[j]udicial policy strongly favors recognition by American courts of foreign arbitral awards." Karen Mar. Ltd. v. Omar Int'l Inc., 322 F. Supp. 2d 224, 225 (E.D.N.Y. 2004).  And the U.S. Supreme Court has made clear that "[a] parochial refusal by the courts of one country to enforce an international arbitration agreement would . . . damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements."  Scherk v. Alberto-Culver Co., 417 U.S. 506, 516-7 (1974).

"Confirmation of a foreign arbitral award is characterized as a 'summary proceeding' that merely converts what is already a final decision into a judgment of a court."  Jiangsu, 399 F. Supp. 2d at 168.  A party opposing confirmation bears the heavy burden of demonstrating that one of the narrow circumstances warranting non-recognition set forth in the Convention applies. Id. "Those circumstances are limited and, in view of the strong public policy favoring arbitration, are to be narrowly construed."  Id.

These narrowly construed, limited circumstances for non-recognition under the Convention are as follows:

> a)  The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it…; or
>
> b)  The party against whom the award is invoked was not given proper notice…; or
>
> c)  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration…; or
>
> d)  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the county where the arbitration took place; or
>
> e)  The award has not yet become binding on the parties…; or
>
> f)  The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where recognition is sought]; or
>
> g)  The recognition or enforcement of the award would be contrary to the public policy of [the country where recognition is sought].

Convention, Article V.

As this Court itself has made clear in a prior matter in which it confirmed a CIETAC arbitration award, the "procedure for obtaining enforcement of a foreign award is straightforward. The party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation." Jiangsu, 399 F. Supp. 2d 165 at 168.  Tianjin Port Free has submitted certified copies of each of these required documents here.

**ARGUMENT**

**POINT I**

**RESPONDENT WAS PROPERLY SERVED
DURING THE UNDERLYING ARBITRATION**

Tiancheng Chempharm argues that it somehow did not receive adequate notice of the arbitration and that the Petition should be dismissed pursuant to Article V(1)(b) of the Convention.  This argument is wholly without merit and should be rejected in its entirety.

 "[A] party seeking to avoid confirmation of an arbitral award on the basis of Article V(1)(b) must demonstrate that the award was rendered pursuant to procedures inconsistent with the forum state's standards of due process." OOO FC Grand, 2017 U.S. Dist. LEXIS 207726 at 16, quoting Sonera Holding B.V. v. Cukurova Holding A.S., 895 F. Supp. 2d 513, 521 (S.D.N.Y. 2012).  "The burden of proving that a ground for refusal of enforcement [exists] is on the party resisting enforcement." Geotech Lizenz AG v. Evergreen Systems, Inc., 697 F. Supp. 1248, 1252 (E.D.N.Y. 1988).  Due process in this forum requires that a party "be given notice reasonably calculated to inform them of the proceedings and an opportunity to be heard." Jiangsu, 399 F. Supp. 2d 165 at 168 (internal quotations omitted).

Here, in a good faith effort to ensure that Tiancheng Chempharm was properly served, Tianjin Port Free provided CIETAC with a total of three different addresses for Tiancheng Chempharm.  (Li Letter, Porter Decl. Ex. A.)  One of these addresses was the Conklin Street Address listed on the Sales Contract that Respondent confirms in its motion papers is its correct address. Another was the Breuer Avenue Address currently on file with the New York Secretary of State as Tiancheng Chempharm's address for service of process, as well as the address of both its Chief Executive Officer and Principal Executive Office.  (Porter Decl., Ex. C.)  The third, the

Bayside Address, was listed in a U.S. business registration database as the location of Tiancheng Chempharm's principal executive office.

The Arbitration Award reflects that CIETAC sent multiple copies of the arbitration materials to multiple addresses for Respondent, including the Conklin Street Address. CIETAC verified that these materials were duly served by mail sent to these addresses, and CIETAC concluded that Tiancheng Chempharm had been properly served.

CIETAC's service of Respondent was entirely proper under CIETAC's rules, which provide that materials are "deemed to have been properly served on the party if delivered to the addressee or sent to the addressee's place of business, place of registration, domicile, habitual residence or mailing address." (Porter Decl., Ex. D at Article 8(3).)

Courts in this District and others have upheld foreign arbitration awards and rejected service-based arguments made by a party opposing recognition of such awards in circumstances mirroring those presented here. In OOO FC Grand Capital, for instance, the Court recognized the foreign award at issue – despite the opposing party's claim to have never received notice of the arbitration – where "attempts were made to deliver arbitration materials to [the opposing party] at three different addresses . . . on multiple occasions," including addresses listed on the subject contract, and where the arbitrator concluded that the party was properly served under the applicable arbitration rules. OOO FC Grand Capital, 2017 U.S. Dist. LEXIS 207726 at **17-8; see also Intel Capital (Cayman) Corp. v. Shan Yi, 15-mc-50406, 2015 U.S. Dist. LEXIS 153495, *4 (E.D. Mich. Nov. 13, 2015) (holding, in an action to confirm a foreign arbitration award, that notice of the commencement of the underlying arbitration proceedings was proper where the petitioner delivered the notice to the respondent's address listed on the applicable contract).

-12-

For the same reasons the Court relied upon in <u>OOO FC Grand Capital</u>, Tiancheng Chempharm was sent notice here "reasonably calculated to inform" it of the arbitration proceeding and its opportunity to be heard, and Respondent's request to re-litigate the service issue already decided by the Tribunal should be rejected.

Respondent has not cited to a single case standing for the proposition that a party's mere self-serving claim to have never received notice of the underlying arbitration is somehow sufficient to deny recognition of a foreign award.  Indeed, the sole case Respondent cites in connection with its substantive argument on this point, <u>Tempo Shain Corp. v. Bertek, Inc.</u>, 120 F.3d 16 (2d Cir. 1997), is irrelevant here because it did not in any way involve a challenge to the service of arbitration materials.  Respondent's argument should be rejected in its entirety.

## POINT II

### RESPONDENT'S ARGUMENT THAT THE CONTRACT WAS SOMEHOW "FABRICATED" IS WITHOUT MERIT

Tiancheng Chempharm does not deny receiving the Goods at issue, does not claim to have paid Tianjin Port Free for the Goods, and appears to concede that "Petitioner performed its duties under the Contract" (Respondent's Memorandum at 1), i.e., to deliver the Goods to Tiancheng Chempharm, the buyer.  Moreover, the Tribunal expressly concluded, following a full arbitration hearing, that on December 16, 2013 Tianjin Port Free and Tiancheng Chempharm "signed the Contract."   (Award at 4.)   Despite these facts and admissions, Tiancheng Chempharm nevertheless asks the Court to dismiss this proceeding <u>as a matter of law</u> based upon Respondent's outrageous assertion, purportedly supported solely by materials not properly before the Court at this stage, that the Contract was somehow "fabricated" because a signature on the document was "forged."   The Court should reject this baseless argument and deny Respondent's motion in its entirety.

-13-

As an initial matter, none of the extraneous materials that Respondent has submitted along with its motion papers are properly before the Court. Respondent bases its "fabrication" argument upon a factual Declaration from Changjiang Yu, along with multiple exhibits annexed thereto. These exhibits include documents labeled "Product Catalogue," Mr. Changjiang Yu's purported current and expired passports, a Chinese visa, and multiple documents containing what is purported to be Changjiang Yu's signature. None of these materials were exhibits to the pleadings or incorporated by reference therein, nor are they materials of which the Court may take judicial notice or of which Petitioner had knowledge and relied upon in initiating this proceeding. Brass, 987 F.2d at 150.

In short, Respondent has no basis whatsoever for submitting these materials at this stage, and the Court should accordingly decline to consider them and deny Respondent's motion.

Regardless, even if the Court decides to consider these materials, Tiancheng Chempharm's argument still fails based upon binding Second Circuit authority.

In Europcar Italia, S.P.A. v. Maiellano Tours, 156 F.3d 310 (2d Cir. 1998), the Second Circuit Court of Appeals directly addressed the exact circumstance presented here, i.e., a party seeking to oppose recognition of a foreign arbitration award under the Convention who argues that the contract underlying the dispute was forged. In concluding that the forgery argument did not implicate the narrowly interpreted exceptions to recognition under the Convention described in Article V, the Court in Europcar expressly held that "the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced [is] a matter to be determined exclusively by the arbitrators." Id. at 315. The Court added that if the party challenging recognition "failed to raise the issue of the forged [ ] agreement to the

arbitrators, the issue is forfeited," and if that party "did raise the issue to the arbitrators, it cannot seek to relitigate the matter here." Id.

The Court's decision in Europcar is directly on point, and forecloses Tiancheng Chempharm's forgery argument as a matter of law.

Moreover, the materials that Respondent has improperly submitted do not support its outrageous conclusion for a variety of reasons.  First, the Sales Contract is signed (on Respondent's behalf) by a "Jeff Yu."  While Respondent asserts in its Memo of Law that Jeff Yu and Changjiang Yu are the same person, Changjiang Yu never actually makes that assertion in his Declaration.  Indeed, the name "Jeff Yu" does not appear in Changjiang Yu's Declaration.

Second, even assuming that Changjiang Yu and Jeff Yu are the same person, Respondent has tellingly failed to submit a sample of Changjiang Yu's signature when signing as Jeff Yu. (See Yu Declaration, Ex. D.)

Third, though Respondent represents in its Memo that "Yu never authorized anyone to enter into any agreement or execute any contract electronically on his behalf," Changjiang Yu notably states only in his Declaration that "[t]o the best of [his] recollection" he did not authorize anyone to enter into the agreement on his behalf.  (Yu Decl. at ¶ 6.)  Mr. Yu's limited, qualified representation on this point is far from definitive, particularly considering that the Sales Contract was executed over four years ago and Mr. Yu apparently signs many documents.  (Id. at Ex. D.)

Fourth, Changjiang Yu's various passports and visas are not definitive as to his travel history, and do not rule out his having authorized a third party in China to execute the Contract on his behalf.  They therefore do not support Respondent's claim of forgery.

-15-

In short, Tiancheng Chempharm's argument on this point is without merit, and its motion to dismiss should be denied.[2]

## POINT III

**RESPONDENT'S ARGUMENT THAT TIANJIN PORT FREE DID NOT ATTEMPT TO "AMICABLY SETTLE" THE DISPUTE IS WITHOUT MERIT**

Tiancheng Chempharm's third argument is that Tianjin Port Free should somehow be prohibited from enforcing the Arbitration Award because it purportedly failed to comply with the Sales Contract's provision that the parties first attempt to "amicably settle" any dispute through negotiation before initiating an arbitration proceeding.  (Respondent's Memo at 9.)  Putting aside the obvious irony of this argument being made by a party that has steadfastly refused to pay a dime for goods it does not deny receiving over four years ago, this argument is nevertheless directly contradicted by the record.

As the Tribunal recounts in the Arbitration Award, prior to initiating the arbitration proceeding Tianjin Port Free "reminded the Respondent to make payment, but the person-in-charge of the Respondent avoided meeting the representatives of [Tianjin Port Free] and refused to fulfill the payment obligations under the Contract."  (Arbitration Award at 3.)

The record accordingly reflects that Tianjin Port Free took appropriate steps to attempt to resolve the matter without resorting to formal arbitration, but that Respondent refused to cooperate with those attempts.  Tiancheng Chempharm simply ignores this inconvenient fact in its motion papers.

---

[2] Petitioner acknowledges that the notarization on page 3 of the Sales Contract appears to relate to the 2017 certified translation of the Sales Contract, and not to the Contract's signatures on page 1.  Petitioner is therefore withdrawing the argument contained in its letter to the Court of December 13, 2017 (Dkt. No. 21) concerning notarized signatures.

-16-

Moreover, having been properly served and having failed to raise this issue before the Tribunal, Tiancheng Chempharm cannot now seek to re-litigate the matter here.  See, e.g., Europcar, 156 F.3d at 315.

<div align="center">

**POINT IV**

**RESPONDENT'S REQUEST FOR ATTORNEYS' FEES IS ENTIRELY BASELESS**

</div>

In addition to requesting that the Court dismiss the Petition as a matter of law, Tiancheng Chempharm also asks the Court to award it attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2). (Respondent's Memo at 10-11.)  This request has no foundation whatsoever in either the applicable law or the record before the Court.

Respondent cites to Carter v. Inc. Village of Ocean Beach, 759 F.3d 159 (2d Cir. 2014) – a case that does not arise in the context of arbitration, let alone a foreign arbitration award under the Convention – for the proposition that "a district court may in its discretion award attorney's fees to a prevailing defendant only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not necessarily brought in subjective bad faith."  While Petitioner does not contest the existence of this general standard in civil rights litigation, it simply has no applicability or relevance here.

By Tiancheng Chempharm's own apparent admission, "Petitioner performed its duties under the Contract." (Respondent's Memorandum at 1.)  Petitioner complied with the arbitration procedures provided in the Sales Contract, and provided CIETAC with three addresses it identified for Respondent in a good faith effort to ensure that Respondent was properly served. One of these addresses is Respondent's correct current address, while one is the address that Respondent itself apparently supplied to the New York State Secretary of State.  Petitioner obtained a valid Award from CIETAC pursuant to the applicable arbitration rules, and now

<div align="center">-17-</div>

merely seeks to enforce that Award here, pursuant to the Convention, in what should be a "summary proceeding that merely converts what is already a final decision into a judgment of a court." <u>Jiangsu</u>, 399 F. Supp. 2d at 168.

Respondent, by contrast, does not deny receiving the subject Goods and does not contend that it paid Tianjin Port Free for the goods.  Instead it asserts claims of forgery based on "evidence" that does not support such an extreme claim, and baselessly accuses Petitioner of committing an "outrageous fraud" and for initiating "an outrageous baseless fraudulent action."

Simply put, Respondent's accusations are wildly irresponsible and completely improper, and there is no basis whatsoever for concluding that Petitioner's attempt to enforce a valid foreign arbitration award is somehow "frivolous." Respondent's request for attorneys' fees should be rejected.

## CONCLUSION

Tianjin Port Free respectfully requests that Respondent's motion to dismiss be denied in its entirety, that Tianjin Port Free's Petition to confirm the Award should be granted in its entirety, and that the Court grant Petitioner such other and further relief as it deems just and proper.

Dated: February 2, 2018

<div style="margin-left:40%">

Respectfully submitted,

WHITE AND WILLIAMS LLP


By:    \_\_\_\_/s/_____
Eric B. Porter
portere@whiteandwilliams.com
7 Times Square, Suite 2900
New York, NY 10036
(212) 714-3078
*Attorneys for Petitioner*

</div>

-18-