# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____X

TIANJIN PORT FREE TRADE ZONE INTERNATIONAL
TRADE SERVICE CO., LTD

                                *Petitioner*,

-against-

                                Civil Action No.:
                              2:17-CV-4130 (LDW)(AYS)

TIANCHENG CHEMPHARM INC. USA

                                *Respondent*,

_____X

## RESPONDENT'S MEMORANDUM OF LAW IN FUTHER SUPPORT OF ITS MOTION TO DISMISS THE PETITION TO CONFIRM ARBITRATION AWARD AND IN RESPONSE TO PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

                                /s/Hui Chen
                                HUI CHEN, ESQ.
                                *Attorneys for Respondents*
                                136-20 38th Ave., Suite 9E
                                Email: hui.chen@alum.cardozo.yu.edu

                                Eric B. Porter, Esq.
                                WHITE AND WILLIAMS LLP
                                *Attorney(s) for Petitioner*
                                Email: @whiteandwilliams.com

February 22, 2018

## TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | ---: |
| I.  | **BACKGROUND** .................................................................. | | 1 |
| II. | ARGUMENT ...................................................................... | | 1 |
|     | A. | *Summary of the Grounds for Refusal to Recognize and Enforce an Arbitral Award under Article V of the New York Convention* ............ | 1 |
|     | B. | *The Respondent never entered into and executed the Contract at issue* .................................................................. | 2 |
|     | C. | *Can The Underlying Arbitration Award Issued by One of Four Sub-commissions of CIETAC in Favor of a Chinese State-Owned Respondent Be Trusted?* ............................................... | 5 |
|     | D. | *The Respondent was never duly served with a Due Process Notice of Arbitration Proceeding in China* ............................. | 7 |
| III. | CONCLUSION .................................................................... | | 10 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Guang Dong Light Headgear Factory Co., Ltd. V. ACI Intern., Inc..*,
No. 03-4165-JAR, 2005 WL 1118130, *5 (D. Kan. May 10, 2005) ......................2

*Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. V. P and S International, Inc.*, No. 08-1292-HU, 2009 WL 2997 184 (D. O. Sept. 16, 2009) ..... 2

Europcar Italia, S.P.A. v. Maiellano Tours, 156 F.3d 310 (2d Cir. 1998) ................3

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 91 (2005) ............................................................................. 6

*Parsons & Whitemore Overseas Co., Inc. v. Societe Generale de L'Industrie du papier (RAKTA),* 508 F.2d 969, 975-76 (2d Cir.1974) ................................................ 7

*Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)......7

*Amstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62(1965) .....7

*Premier Staffing Servs. Of N.Y., Inc., v. RDI Enters, Inc.,* 213 NY Slip Op 23127 [39 Misc 3d 978] ..............................................................................................10

**Law, Rules and Treaties**

TREATIES Convention for the Recognition and Enforcement of
Foreign Arbitral Awards, June 10, 1958,
21 U.S.T. 2517, 330, U.N.T.S. 38,
codified at 9 U.S.C. §§ 201-208 (2000) ........................................................7

Geneva Convention (1927) *Travaux préparatoires, Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards and Comments by Governments and Organizations, Report of the Committee on the Enforcement of International Arbitral Awards, E/2704 and Annex, p. 2.* ............................................................... 9

NY CPLR 311 (2015) ............................................................................... 10

## Bibliography

*Cohen, Jerome A. Time to Fix China's Arbitration. Far Eastern Economic Review, Volume 168, Issue 1, pp. 31-37  (Cohen 2006)* ................................. 6


*Zimmerman, Jonathan H. When Dealing With Chinese Entities, Avoid the CIETAC Arbitration Process. The Advocate, Official Publication of the Idaho State Bar. Volume 53, Issue 2, pp. 23 – 24* ........................................................... 6


*Vincent C. Alexander, Practice Commentaries, McKinney's Con Laws of New York, Book 7B, CPLR C311:1* ........................................................... 10


*U.S. Department's of State report entitled "2015 Investment Climate Statement – China", could be found at* https://www.state.gov/e/eb/rls/othr/ics/2015/241518.htm ............................... 5

**I. BACKGROUND.** The Petitioner's version of the facts relevant to the instant case are highly disputed and contested by the Respondent. **Based on the Respondent's knowledge and belief**, the Petitioner TPFTZ is a Chinese communist state-owned company based in Tianjin, China. In addition, the Petitioner is not a manufacturing company and did not produce the "Goods" as defined in the Petition to Confirm Arbitration Award. It is a state-owned port operator or company that contracts with port authority to move cargo through a port. It is absolutely unclear from the facts provided by the Petitioner as to how the Petitioner obtained the "Goods" in the first place. In addition, given the factual scenario provided by the Petitioner, it is very doubtful and confusing to understand the nature of the relationship between the parties in this case, especially in light of the fact that the Parties never had a direct business relationship.

The relevant facts set forth in the Declaration by Changjiang Yu, his additional Affidavit and a Declaration by Guoji Zhang, the President of the Respondent show that a corporate Respondent Tiancheng was never duly served with any notice of arbitration, that the Respondent has never had a direct business relationship with the Petitioner, needless to say that the Contract at issue was never entered into and executed by the Respondent. Please refer to annexed <u>Exhibit A.</u> For a procedural background, please refer to the underlying Motion to Dismiss and Petitioner's Memo of Law in Opposition to that Motion ("Last Memo").

**II. ARGUMENT.** The underlying arbitration proceeding and a subsequent Petitioner's Petition to Confirm Arbitration Award are premised on the Petitioner's version of facts surrounding the Contract in question. Absent such a Contract, the whole case against the Respondent falls apart and should be dismissed in its entirety.

*A. <u>Summary of the Grounds for Refusal to Recognize and Enforce an Arbitral Award under Article V of the New York Convention</u>.* The New York Convention provides that "[a]

1

shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition of enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The party opposing confirmation bears the burden on proving that one of the seven defenses set forth in the New York Convention applies. Article V of the New York Convention provides the following grounds of refusal to recognize and enforce an arbitral award: "(1) the parties to the agreement were under some incapacity or the agreement is not valid under the laws the parties have subjected it to; (2) the party against whom the award was invoked did not receive proper notice; (3) the award contains decisions on the matter outside the scope of the arbitration agreement; (4) the composition of the arbitral authority was not in line with the agreement of the parties or was not in line with the law under which the award was made; and (5) the award is not binding on the parties , or it has been set aside by a competent authority in the country where the award was made. *See* <u>Guang Dong Light headgear Factory Co., Ltd. V. ACI Intern., Inc..,</u> No. 03-4165-JAR, 2005 WL 1118130, *5 (D. Kan. May 10, 2005) (citing 9 U.S.C. § 207, New York Convention, art. V).

In the instant case, the Respondent first asserts that the Chinese arbitration award should not be confirmed because the Respondent never signed the alleged Sales Contract and that Contract was forged by the Petitioner. Secondly, the Respondent "did not receive notice reasonably calculated to apprise it of the pendency of the arbitration and allow it a meaningful opportunity to be heard, as required to satisfy due process." *See* <u>Qingdao Free Trade Zone Genius Int'l Trading Co., Ltd. V. P and S International, Inc.,</u> No. 08-1292-HU, 2009 WL 2997 184 (D. O. Sept. 16, 2009). Finally, the Arbitration Award itself cannot be trusted in light of provided below facts and arguments.

**B. <u>The Respondent never entered into and executed the Contract at issue.</u>** The Respondent will respond below to the Petitioner's arguments regarding the Contract in its Last

Memo. Contrary to the Petitioner's statement in its Last Memo, the Respondent neither confirmed nor denied the receipt of "Goods" in its Motion to Dismiss. The issue of the receipt of the Goods was simply never covered in the Respondent's Memorandum in Support of the Motion to Dismiss. By claiming in its Last Memo that the Respondent appeared to concede that "Petitioner performed its duties under the Contract", the Petitioner's attorney has taken the Respondent's words out of context and completely misrepresented the Respondent's statement. (Last Memo at 13).

On Page 1 of the Respondent's memorandum of points and authorities in support of the Motion to Dismiss, the Respondent just states: "Based upon the Petition filed by Petitioner, Petitioner performed its duties under the Contract", which in turn means nothing more than that it is the Petitioner that unilaterally contends that it performed its duties under the Contract. Contrary to the Petitioner's assertion that the Respondent was supposed to raise the issue of the forged contract to the arbitrators according to the Second Circuit Court of Appeals decision in *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998), the Petitioner completely disregards the fact that the Respondent has never received a notice of arbitration required to satisfy the due process, and under such facts, cited by the Petitioner case is not directly on point and does not foreclose the Petitioner's argument of forgery as a matter of law. (Last Memo at 14-15).

Furthermore, as follows from the follow up Affidavit of Changjiang Yu ("Mr. Yu") and Declaration of Guoji Zhang, both annexed as Exhibit A, after coming to the United States for a permanent residency, in order to fit in and for convenience of pronunciation, Mr. Yu changed his name from "**Changjiang Yu**" to "**Jeffrey Yu**" and most people, including those who work with him for the Respondent, including Mr. Zhang, know and call him as "**Jeff Yu**." Moreover, the Petitioner's argument that Mr. Yu failed to submit a sample of his signature when signing as Jeff Yu does not hold as Mr. Yu has never signed any documents or other paper requiring his signature,

3

as JEFF YU. The fact that people in the United States, including his co-workers and his boss, know and call him as Jeff Yu does not mean that Mr. Yu actually signs as Jeff Yu. Therefore, the Respondent to its Motion to Dismiss already attached a sample of Mr. Yu's one and only signature.

Moreover, in response to the Last Memo, in his follow up Declaration, Mr. Yu does attest without any conditions that he did not authorize anyone to enter any agreement or execute any contract electronically on his behalf. (Exhibit A, Yu's Decl. at 3).

Likewise, the Petitioner's argument in its Last Memo that Mr. Yu's various passports and visas are not "definitive as to his travel history, and do not rule out his having authorized a third party in China to execute the Contract on his behalf", are completely baseless due to the reasons provided below. (Latest Memo at 15). First, it is relatively simple to send an official request to the U.S. Customs and Border Protection to find out Mr. Yu's travel history in the years of 2013 and 2014 and indeed verify that he not travel to China in December of 2013. Processing such a request might take up to 3 months and therefore, the Respondent was not able to submit same herewith. Secondly, even assuming for the sake of the argument that Mr. Yu acting on behalf of the Respondent authorized some third party in China to execute the Contract at issue on his behalf, the question arises as to why wasn't such an authorization attached to the Sales Contract.

Furthermore, the Petitioner's argument about the existence of some third party in China completely contradicts its argument in the Petition to Confirm that Respondent's signature via the signature of Jeff Yu, as clearly shown at the bottom right corner of the first page of the Contract, was notarized, while in fact it was obviously not. (Respondent's Memo in Support of Motion to Dismiss at 4-5).

In addition, as a general observation, it shows bad faith Petitioner's attorney's part when in his legal papers pertaining to the instant case he cites a lot of numerous dates relevant to this

4

case, but with regard to an actual alleged delivery and acceptance of the "Goods" at issue by the Respondent, never provides a single concrete date. It is also extremely confusing as to why the Petitioner's attorney up to this date never provided the Respondent and the Court with copies of such documents as the actual Bill of Lading, commercial invoice, etc., which should have been documents evidencing the existence of the Sales Contract, alleged delivery of the Goods at issue from Petitioner to Respondent, which, according to the Respondent, were never received.

Based on the foregoing and contrary to the Petitioner's arguments that are completely baseless, the Respondent hereby repeats and reiterates its argument presented in the Motion to Dismiss that the alleged Sales Contract was indeed fabricated because Mr. Yu's signature on the document was forged.

**C. *Can The Underlying Arbitration Award Issued by One of Four Sub-commisions of CIETAC in Favor of a Chinese State-Owned Respondent Be Trusted?*** Since the Contract at issue was forged, stemming from that Contract arbitration proceeding and Arbitration Award, and Petition to Confirm that Award are completely pointless and should be dismissed in its entirety. Notwithstanding the foregoing, let's assume for the sake of the argument that there was a contract between the parties. Then the issue arises presented by the facts of the instant case as to whether or not the CIETAC decision can be trusted? Please refer to the excerpt from the U.S. Department of State official report entitled "2015 Investment Climate Statement – China", annexed as Exhibit B regarding China International Economic and Trade Arbitration Commission (CIETAC). Thus, according to the official U.S. Department of State advisory opinion, it is possible to question CIETAC's procedures and effectiveness. In light of the foregoing, the fact that the Arbitration Award was granted by one of 4 sub-commissions also raises a question of the enforceability of the Arbitral Award at issue. Furthermore, it has been indicated in numerous publications regarding

5

the CIETAC arbitration's fairness and effectives that an anti-foreign bias and local protectionism do exist among CIETAC arbitrators. For instance, Jerome A. Cohen, a respected legal scholar and experienced CIETAC arbitrator, has urged for the CIETAC to address the defects that relate to the procedure according to which the arbitrators' hearing the proceedings are chosen, considered biased, and expected confidentiality. Cohen has, among others, suggested that the CEITAC should refrain from using its own personnel as arbitrators. *See* Cohen, *Jerome A. Time to Fix China's Arbitration. Far Eastern Economic Review, Volume 168, Issue 1, pp. 31-37* (Cohen 2006). Since the Respondent never received a proper notice, it was deprived of the opportunity to meaningfully participate in the selection of Arbitrators on the panel. In that regard, the Second Circuit in its decision in Encyclopedia Universalis S.A. v. Encyclopedia Britannica, Inc., 403 F.3d 85, stated that "[w]hile we acknowledge that there is a strong public policy in favor of international arbitration, … we never held that courts must overlook agreed-upon arbitral policies in deference to that policy." The Second Circuit in the aforementioned case also stated that "the issue of how the third arbitrator was appointed is more than a trivial matter of form. Article V(1)(d) of the New York Convention itself suggests the importance of arbitral composition, as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award." *Id.* Some practitioners even claim that CIETAC arbitration should be avoided at all costs. *See Zimmerman, Jonathan H. When Dealing With Chinese Entities, Avoid the CIETAC Arbitration Process. The Advocate, Official Publication of the Idaho State Bar. Volume 53, Issue 2, pp. 23 – 24.*

Based on the foregoing considerations, it is reasonable to assume that there was some collusion between the Chinese state-owned Petitioner and the Arbitrators that issued the Award in question, specifically given the fact that the Arbitrators accepted an extremely suspiciously looking

Sales Contract that was allegedly signed by an absent during the whole proceeding U.S. based Respondent without notarization. In addition, given the fact that the Respondent did not receive a due process notice of the pending arbitration in China and was not able to choose its arbitrator, that the Respondent was deprived of the opportunity to present its case, it is also logical to conclude that the Arbitrators that issued the Award did not act in an impartial manner and in rendering their decision were biased towards owned by a communist People's Republic of China Respondent and against the U.S. privately owned, absent Respondent.

    ***D. The Respondent was never duly served with a Due Process Notice of Arbitration Proceeding in China.*** One more time, let's disregard for the sake of the argument the fact that the Sales Contract was forged. The Petitioner's version of facts of the instant case presents the issue of whether or not the Respondent was given proper notice of the arbitration proceeding in China. *See New York Convention, Art. V(1)(b)*. Second Circuit has recognized that the defense provided for in Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process", and that due process rights are "entitled to full force under the Convention as defenses to enforcement." See *Parsons & Whitemore Overseas Co., Inc. v. Societe Generale de L'Industrie du papier (RAKTA),* 508 F.2d 969, 975-76 (2d Cir.1974). Under the law, [t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." See *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Amstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62(1965)). Accordingly, if the Respondent was indeed denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b). Both the Petitioner in its pleadings and memorandums of law and CIETAC in its Arbitral Award decision state numerous times that the notice of Arbitration, the Arbitration Rules, and a

7

list of arbitrators were sent to the Respondent via express mail service on May 13, 2018 and May 18, 2018 the Respondent was **duly** served with same papers. Furthermore, according to the same documents, the notice of tribunal session opening was sent to the Respondent on July 14, 2015 via express mail. Both aforesaid alleged notices were returned by the post office since both notices were never delivered to an actual corporate Respondent's agent authorized to accept service on behalf of the Respondent. It is completely unclear as to why both the Petitioner and the arbitration decision claim that the aforesaid notices were duly served. (Arbitral Award at 1-3). What does the word "duly" mean under the foregoing circumstances?

Following the return of both aforesaid notices, the Petitioner supposedly provided the Arbitration Court with new Respondent's addresses, one of which was a randomly chosen falsified address, as was already discussed in the Respondent's Motion to Dismiss. (Motion to Dismiss at 7). In that regard, the Arbitral Award decision states that the notice of session opening was duly served on September 4, 2015 and the Arbitral tribunal held its session on October 15, 2015, just one month and 10 days later! (Arbitral Award at 2). According to the Declarations of the Respondent's President and Manager, the Respondent never received the aforementioned notices of arbitration proceeding and its different stages, not were the two Deponents expecting to receive same provided that the Respondent had never signed the Sales Contract and accordingly was not aware that there was a forged contract presented by the Petitioner to CIETAC. Furthermore, given a complete disarray and confusion created by the Petitioner with regard to the Respondent's multiple addresses, the Arbitral Tribunal did not act with due diligence, nor were its actions reasonable under the circumstances, while trying to allegedly serve the Respondent. Let's assume for the sake of the argument that the Arbitrators had a good faith belief that the Respondent was served with a notice on September 4, 2015. In that regard, Article 2(b) of the 1927 Geneva

8

Convention, which was later adopted by the drafters of the New York Convention, states that "… recognition and enforcement of the award shall be refused if the Court is satisfied: That the party against whom it is sought to use the award was not given notice of arbitration proceeding in sufficient time to enable him to present his case; or that, being under a legal capacity, he was not properly represented."  So under Geneva Convention it was established that there were the grounds for refusal of the enforcement of an award where a party "was not given notice […] of the arbitration proceeding in due form or in sufficient time to enable him to present his case." *See Travaux préparatoires, Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards and Comments by Governments and Organizations, Report of the Committee on the Enforcement of International Arbitral Awards, E/2704 and Annex, p. 2.* The drafters of the New York Convention retained the notice requirements of Geneva Convention.  However, they wished to also cover other serious breaches of due process and thus included the inability of a party to present its own case as a separate requirement. *See Travaux préparatoires*, *Summary Records of the United Nations Conference on International Commercial Arbitration, Twenty-third Meeting, E/CONF.26/SR.23, p. 15.*

Applying the foregoing considerations to the instant case, not only the Respondent never received any notice of any stage of the Chinese arbitration proceeding, but also was deprived of the opportunity to present its case.  Given the passage of time between the alleged service of notice on September 4, 2105 and the commencement of the proceeding only a month and 10 days later, how could have the U.S. based Respondent, which never entered into any contract with the Petitioner, found the right attorney, been able to put aside the business's current matters and travel to China to present its case, counterclaims, its defenses, etc. in a "meaningful time and in a meaningful manner."

Furthermore, given the confusion the Petitioner created with the Respondent's addresses, the Petitioner in addition to having the arbitration tribunal allegedly sending notices to the Respondent, could have easily have the Respondent served with a proper due process notice of the arbitration proceeding in China within the guidelines of CPLR 311 that explains that "aside from service under Business Corporation Law, CPLR 311(a)(1) directs personal delivery to the particular representative being served on behalf of the corporation." *See Vincent C. Alexander, Practice Commentaries, McKinney's Con Laws of New York, Book 7B, CPLR C311:1.* This means that overnight mailing of the legal papers via Federal Express is inadequate. See <u>Premier Staffing Servs. Of N.Y., Inc., v. RDI Enters, Inc.,</u> 213 NY Slip Op 23127 [39 Misc 3d 978].

Based on the foregoing, the Petition to Confirm an Award should be dismissed in its entirety. The Respondent, a privately held struggling small local business should not be forced to defend this fraudulent fabricated frivolous action.

**III. CONCLUSION.** For the reasons set forth above, Respondent TIANCHENG respectfully requests that the Court Deny Petitioner TPFTZ's Petition to Confirm Arbitration Award with prejudice and award Respondent's costs and attorney's fees and award such other and further relief that the Court deems just and proper.

Respectfully submitted this 22nd day of February, 2018.

                                                Law Offices of Hui Chen and Associates, P.C.

                                                /s/Hui Chen
                                                By: Hui Chen, Esq.
                                                *Attorneys for Respondent*